UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X

RICHARD LOWENTHAL, on behalf of himself and all others similarly situated,

                Plaintiff,

-against-

CABLEVISION SYSTEMS CORPORATION and NEPTUNE HOLDINGS US CORP. n/k/a ALTICE USA, INC.

                Defendants.

------------------------------------------------------------X

Case No. 2:17-cv-06697

## CLASS ACTION COMPLAINT

Plaintiff, Richard Lowenthal ("Plaintiff"), individually and on behalf of all persons similarly situated, alleges the following based upon personal knowledge (as to all facts related to himself) and information and belief (as to all other matters) against Defendants Cablevision Systems Corporation ("Cablevision") and Neptune Holdings US CORP. n/k/a Altice USA, Inc. ("Altice") (collectively "Defendants") as follows:

## NATURE OF THE ACTION

1.      This class action case arises from Defendants' deceptive and misleading change in their billing practices for consumers who cancel their cable, telephone and internet services and their deceptive and improper notice to consumers about this change.

2.      Defendants provide cable, internet and telephone services in New York, New Jersey, and Connecticut under the Optimum brand name.

3.      In June 2016, Altice completed its acquisition of Cablevision, forming a new telecommunications giant in the United States. The new Altice USA is one of the largest

1

broadband providers in the country.

4. Following this acquisition, Defendants changed their billing practices so that they could increase profits by charging consumers for services that they attempted to cancel.

5. Starting on October 10, 2016, Defendants changed their billing practice to make consumer cancellations effective on the last day of their then-current billing cycle. Prior to this change, a consumer's cancellation was effective on the date of the actual cancellation. With Defendants' new billing practice, consumers are billed for the entirety of their then-current billing period even if they cancel their service and return their equipment before the end of their then-current billing period.

6. Defendants informed consumers about this change in billing practice only by including limited misleading language buried in select billing statements. Defendants did not provide separate written notice to consumers about this change.

7. Plaintiff was enrolled in Defendants' telephone, cable and internet services. Like members of the Class, Plaintiff canceled his services and returned his equipment before the end of his then-current billing period, but was nevertheless charged and paid for all services through the end of his then-current billing period.

8. Defendants deceptively changed their billing practices to increase profits on the backs of consumers and failed to provide proper notice to consumers. This lawsuit seeks restitution for customers who cancelled their Optimum services, but were nevertheless charged and paid for the entire month without proper notice that these fees would be charged.

## JURISDICTION AND VENUE

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d) because the aggregate claims of the Class (as defined below) exceed the sum or value of $5,000,000.00, the proposed

class consists of more than 100 members, and there is minimal diversity of citizenship between Plaintiff and proposed Class members, and Defendants.

10. This Court has personal jurisdiction over Defendants because each conducts substantial business in New York, they intentionally avail themselves of the rights and privileges of conducting business in the Eastern District of New York, and they have continuous and systematic contacts with New York.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because substantial acts in furtherance of the alleged improper conduct giving rise to the claims herein occurred within this District, and because Defendants are headquartered in this District.

## PARTIES

12. Plaintiff is an individual who, at all relevant times, was a citizen of the state of New Jersey. He enrolled in Defendants' telephone, cable and internet services from approximately April 2004 until October 19, 2017, when he canceled his services and returned all of his equipment.

13. Defendant Cablevision Systems Corporation ("Cablevision") has a principal place of business located at in Bethpage, New York. Cablevision provides telecommunication services, including television, internet and phone services. Cablevision serves customers in the New York metropolitan area under its Optimum brand name. Cablevision is 100% directly owned by Altice.

14. Defendant Neptune Holdings US Corp. n/k/a Altice USA, Inc. ("Altice") has a principal place of business located in Bethpage, New York.

**BACKGROUND FACTS**

15.     Plaintiff enrolled in Defendants' Optimum television, internet and phone services in or around April 2004.

16.     Plaintiff received a monthly bill for all three services to his home address.  He did not receive any e-mail communications from Defendants.  Plaintiff paid his monthly bill by mailing his payment to Defendants, he did not use online bill payments.

17.     The Terms and Conditions in Plaintiff's possession from 2005 specifically state: "12.  Termination of Service by Customer:  Customer shall have the right at any time to terminate the service by giving (7) days prior written notice to Cablevision.  In the event customer elects to terminate the service, customer will pay for such service until the date of disconnection.  However, in no event, unless customer fails to keep the scheduled disconnect appointment, shall customer pay for a period greater than seven (7) days after Cablevision receives such written notification of termination."

18.     Plaintiff continued with Optimum brand services until on or around October 12, 2017, when Plaintiff called Defendants to inform them that he needed to cancel his service because he was moving to Florida on October 20, 2017.  Plaintiff specifically asked what Defendants required to officially cancel his services.  The representative for Defendants advised Plaintiff that all that was required to cancel his services was for him to return his Optimum equipment.  Defendants did not inform Plaintiff of their change in billing practices or that he would be charged for all services through the end of his then-current billing period.

19.     On or around October 18, 2017, Plaintiff again called Defendants to confirm the exact equipment he was required return to terminate his Optimum brand services.  The representative reviewed the list of equipment with Plaintiff and confirmed that turning in the

specific items listed would terminate all services.  Again, the representative did not inform Plaintiff of the change in billing practices or that he would be charged for all services through the end of his then-current billing period.

20.     On October 19, 2017, Plaintiff returned all of his equipment to an Optimum store and terminated his services.  Nevertheless, Plaintiff was charged for all services after he returned his equipment, through his then current billing period, which started on October 16 and ended on November 15, 2017.  Plaintiff's final bill, which he received after cancelling his services, provides that "You're billed each month in advance for the next month's services.  Service cancellations are effective on the last day of the then-current billing period."  The final bill did not inform Plaintiff that charges would not be pro-rated according to the date he returned his equipment.  Rather, his final bill states "If any changes are made to your account during the month, partial month charges may apply."

21.     Prior to returning his equipment to Defendants, Plaintiff did not know that he would be charged for all services after canceling his services and returning his equipment.  He does not recall receiving any separate written notice of Defendants' change in billing practices.

22.     Had Plaintiff known that he would be required to pay for all services through the end of his billing cycle, he would have returned his equipment before the end of his then-current billing period, so that he would not have incurred additional charges for services which he was unable to access at his new residence, or he would have canceled his service prior to Defendants' change in billing practice taking effect.

23.     Other consumers have also complained about Defendants' change in their billing practice.  Two consumers in New Jersey cancelled their service only to find out that they would nevertheless be responsible for all charges through the end of their then current billing cycles.

As one consumer explained "They constantly send me emails to try and get me to upgrade my services but when it came to this, they just buried it (a notice changing Optimum's terms) in their bill."[1]

24.     A spokesperson from Altice, responded that the company "informed customers of the change in several monthly statements."[2]

25.     There are also numerous complaints on social media sites from consumers who terminated their services and did not know that they would be charged for the entirety of their then-current billing period.  For example consumers have stated:

- "I recently switched cable TV, phone and internet providers. I returned all of my Optimum equipment on 2-22-17 and asked the woman to terminate my service. She said ok and asked me if I was moving or switched providers. I stated that I switched providers. She handed me a receipt for the equipment and I asked if my service was cancelled and she stated "yes", never mentioning the end of cycle policy. The following day I received an email from Optimum stating that my service was cancelled effective March 15, 2017 and that I would be billed until then. I reached out to Optimum customer service who stated that this was their new policy that they only cancel service at the end of a billing cycle. I stated that I was unaware of this new policy and that I shouldn't have to pay for something for an additional 21 days that I wasn't using. Basically I was told there was nothing I could do about it and nobody could help me further."[3]

- "Scam artists: Unhappy with Optimum for their high rates and slow internet service despite the speed I was paying for but never got. Called to disconnect on Oct 10 and they say I have to pay thru Nov 8 and that the last bill cannot be prorated even though their service was disconnected from my house on Oct 13 and Verizon put in place. They claim this policy of paying for a FULL billing cycle regardless of when you disconnected and no longer had their service was a result of a policy change that supposedly came in fine print on your regular bill online. I did not see this, and I did not agree to this change."[4]

---

[1] Optimum Disconnect May Cost You More, Dave P. Willis, Nov. 2, 2016, Asbury Park Press, available at http://www.app.com/story/money/business/consumer/press-on-your-side/2016/11/01/optimum-cablevision-altice/93072666/ (last checked November 16, 2017).
[2] *Id*.
[3] https://www.consumeraffairs.com/cable_tv/optimum.html (Complaint dated February 23, 2017).
[4] https://www.consumeraffairs.com/cable_tv/optimum.html (Complaint dated January 28, 2017).

- "I've been a customer of Optimum/Cablevision for 20 years and called today to get my service disconnected and was told I will be charged through the end of my billing cycle of March 14, which is 3 weeks from now. Optimum does not service my new house and I will be unable to use my billed service through March 14, 2017."[5]

- "Same complaint as many others. We cancelled service on February 2nd, and returned all equipment on February 3rd. Optimum is still trying to charge us until the end of the month! Charging for services not rendered. Isn't this illegal?"[6]

- "I have a similar story as many of the previous posts. After raising my rate by 25%, I cancelled my service and switched to FIOS. Unbeknownst to me was that Optimum unilaterally changed their billing policy after the Altice takeover in Oct 2016 to make their customers responsible for the entire month's bill, regardless of when in the cycle the customer cancelled. I was only 4 days into the next billing cycle and am being billed for the entire month (they did however, prorate only the small telephone portion of the bill, probably because of local laws). I got nowhere pleading my case to two different Optimum reps on the phone and one was very sympathetic, but said that they are forbidden from doing anything about it. I even wrote a letter appealing to their sense of fairness and got back a very impersonal form letter just reiterating that the charges are correct. I was not disputing whether or not they were correct. I was questioning if they were fair and reasonable!"[7]

26. New Jersey Administrative Code § 14:18-3.8 covers methods of billing for cable television companies and provides that: "(a) Bills for cable television service shall be rendered monthly, bi-monthly, quarterly, semi-annually or annually and shall be prorated upon establishment and termination of service.. . . . (c) A cable television company may, under uniform nondiscriminatory terms and conditions, require payment, in advance, for a period not to exceed that for which bills are regularly rendered, as specified in its applicable filed schedule of prices, rates, terms and conditions. Any such advance payment for a greater period shall reflect appropriate discount for the additional period involved. Unless otherwise provided for in the

---

[5] https://www.consumeraffairs.com/cable_tv/optimum.html (Complaint dated February 22, 2017).
[6] https://www.consumeraffairs.com/cable_tv/optimum.html (Complaint dated March 18, 2017).
[7] https://www.consumeraffairs.com/cable_tv/optimum.html (Complaint dated March 13, 2017).

applicable filed schedule of prices, rates, terms and conditions, initial and final bills shall be prorated as of the date of the initial establishment and final termination of service."

27. Defendants, rather than prorating consumers' bills for cable television service upon a consumer terminating service and returning his or her equipment as required by N.J.A.C. § 14:18-3.8, are charging and collecting payment for the consumers' entire then-current billing period.

28. Not only did Defendants deceptively change their billing practices to collect money from consumers for services that they cancelled and do not receive, but their conduct was also deceptive in that they failed to provide separate written notice to consumers and instead included limited misleading language about the change in billing practices in select billing statements. Additionally, consumers who terminated their services do not receive pro-rated bills, but rather, are charged for services after they terminated their services and returned their equipment.

29. Plaintiff, like Class members, was charged and paid for fees for services he canceled and did not receive.

## CLASS ALLEGATIONS

30. Plaintiff brings this action individually and on behalf of all others similarly situated pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), 23(b)(3), and 23(c)(4) and seeks certification of the following Class and New Jersey Subclass (collectively, "Class"):

**Optimum Subscriber Cancellation Class**: All people who subscribed to Defendants' Optimum services prior to October 10, 2016 and who have cancelled their services before the end of their then-current billing cycle, but who were charged for and paid Defendants for the entire then-current billing period.

**New Jersey Optimum Subscriber Subclass**: All people in New Jersey who subscribed to Defendants' Optimum services prior to October 10, 2016 and who have cancelled their

services before the end of their then-current billing cycle, but who were charged for and paid Defendants for the entire then-current billing period.

The class does not include Defendants, or its officers, directors, agents, or employees, or the members of the judiciary to whom this case is assigned, nor the members of their respective staffs.

31. The case is properly brought and should be maintained as a class action under Fed. R. Civ. P. 23 satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

32. *Numerosity:* Class Members are so numerous that joinder of all members is impracticable. While the exact number of Class members cannot yet be determined, the Class consists of thousands of people, such that joinder of all members is impracticable. The exact number of Class members can readily be determined by a review of information maintained by Defendants.

33. *Commonality:* The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

   a. Whether Defendants are responsible for the conduct alleged herein which was uniformly directed at all consumers who canceled their Optimum services;

   b. Whether Defendants' misconduct set forth in this Complaint demonstrates that Defendants have engaged in unfair, fraudulent, or unlawful business practices with respect to their change in billing practices for consumers who canceled their services;

   c. Whether Defendants' misconduct set forth in this Complaint demonstrates that Defendants have engaged in unfair, fraudulent, or unlawful business practices with respect to its notice to consumers about their change in billing practices for consumers who canceled their services;

9

   d. Whether Plaintiff and the Class are entitled to injunctive relief;

   e. Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

   34. *Typicality*: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and paid fees to Defendants for services that they had terminated. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

   35. *Adequacy*: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent; his consumer fraud claims are common to all members of the Class and he has a strong interest in vindicating his rights; he has retained counsel competent and experienced in complex class action litigation and they intend to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiff and his counsel. Defendants have acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

   36. The case is properly brought and should be maintained as a class action because common issues of law and fact predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' deceptive and misleading practices. In addition, this Class is superior to other methods for fair and efficient adjudication of this controversy.

37. *Superiority*: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b. The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c. When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d. This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f. This class action will assure uniformity of decisions among Class Members;

g. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i. It would be desirable to concentrate in this single venue the litigation of all plaintiffs who paid fees due to Defendants' unfair and misleading conduct.

38. Accordingly, this Class is properly brought and should be maintained as a class action because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**COUNT ONE VIOLATIONS OF NEW JERSEY CONSUMER FRAUD ACT, N.J.S.A. § 56:8-1, *et seq.***
**(On Behalf of Plaintiff and the Subclass)**

39. Plaintiff adopts and incorporates paragraphs 1-38 of this complaint as if stated fully herein.

40. Plaintiff brings this claim on his own behalf and on behalf of each member of the New Jersey Subclass.

41. Under the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et. seq.*, consumer fraud is "any unconscionable commercial practice, deception, fraud, false pretense, false promise or misrepresentation" in connection with the sale or lease of goods and services. *See* N.J.S.A. 56:8-2.

42. Defendants engaged in consumer-oriented conduct by deceptively and misleadingly charging and collecting fees for cable, telephone and internet services.

43. In the course of providing Optimum telephone, cable and internet services to residential customers, including Plaintiff and members of the Class, Defendants deceptively changed their billing practices in connection with the termination of services, for the benefit of Defendants and to the detriment of Plaintiff and Class Members.

44. As noted above, Defendants changed their billing practice to charge for and collect fees for services that consumers terminated and no longer wanted to receive.

45.    Defendants not only deceptively changed their billing practice, but they deceptively failed to provide separate written notice to consumers about the change in their billing practice and instead included limited misleading language about the change in billing practices in select billing statements.  Additionally, Defendants failed to pro-rate their consumers' bills and deceptively charged the entire amount of their then-current billing period.

46.    Defendants' change in its billing practice, failure to provide a separate written notice to consumers, and failure to pro-rate bills for consumers who terminated their services was likely to mislead a consumer acting reasonably under the circumstances.  Consumers do not expect to pay for services that they cancel and consumers expect to receive clear written notice that is not buried in their monthly billing statements when Defendants change their billing practices.

47.    As a result, Plaintiff and Class members have suffered harm in the form of increased fees resulting from being charged for services that they had terminated.

48.    Defendants' violations of New Jersey law have at all times been knowing and willful.

49.    There is no adequate remedy at law.

50.    Pursuant to the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et. seq.*, Plaintiff is therefore entitled to treble damages, an order enjoining Defendants' deceptive and unfair conduct, attorney's fees, and costs, and all other just and appropriate relief.

**COUNT TWO UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and All Class Members in the Alternative)**

51.    Plaintiff adopts and incorporates paragraphs 1-38 of this complaint as if stated fully herein.

52. Plaintiff, on behalf of himself and consumers nationwide, brings a common law claim for unjust enrichment.

53. Plaintiff and all other Class members conferred benefits on Defendants by paying Defendants for services that they had cancelled and equipment that they had returned.

54. Defendants knowingly and willfully accepted monetary payment from Plaintiff and Class members.

55. Under the circumstances described herein, it is inequitable for Defendants to retain the monetary benefits derived from Plaintiff and Class members.

56. By engaging in the conduct described above, Defendants have been unjustly enriched at the expense of Plaintiff and Class members. Accordingly, it would be contrary to principles of equity and good conscience to permit Defendants to retain any ill-gotten monetary benefits obtained as a result of the actions described herein.

57. As a result of Defendants' unjust enrichment, Plaintiff and the Class members have suffered injury and are entitled to reimbursement, restitution, and disgorgement by Defendants of the benefit conferred by Plaintiff and Class members.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff, on behalf of himself and the Class, pray for judgment as follows:

a. Declaring this action to be a proper class action;

b. designating Plaintiff as the Class representative;

c. designating Plaintiff's counsel as counsel for the Class;

d. issuing proper notice to the Class at Defendants' expense;

e. awarding restitution and disgorgement of Defendants' revenues obtained by means of any wrongful act or practice to Plaintiff and the Class;

    f.  awarding actual, statutory, treble and punitive damages and interest to Plaintiff and the Class;

    g.  awarding reasonable attorneys' fees, costs, and expenses to the full extent the law permits to Plaintiff and the Class; and

    h.  for all other and further relief this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

This 16th day of November 2017

                              **MORGAN & MORGAN**
                              **COMPLEX LITIGATION GROUP**

                              */s/ Marisa Glassman*
                              Marisa K. Glassman (NY Bar No. 4855599)
                              John A. Yanchunis (Florida Bar No. 324681) [*to be admitted pro hac vice*]
                              201 N. Franklin St., 7th Floor
                              Tampa, FL 33602
                              Telephone: (813) 223-5505
                              Facsimile: (813) 222-2434
                              mglassman@forthepeople.com
                              jyanchunis@forthepeople.com

                              *(Attorneys for Plaintiff)*